IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00295-KDB

| | |
|---|---|
| JANICE DURHAM,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW M. SAUL,<br><br>Defendants. | <br><br><br><br>**ORDER** |

**THIS MATTER** is before the Court on Plaintiff Janice Durham's Motion for Judgment on the Pleadings (Doc. No. 14) and Defendant's Motion for Summary Judgment (Doc. No. 18). Ms. Durham, through counsel, seeks judicial review of an unfavorable administrative decision denying her application for a period of disability and disability insurance benefits under the Social Security Act.

Having reviewed and considered the parties' written arguments, the administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

On December 27, 2016, Plaintiff filed a claim for a period of disability and disability insurance benefits under title II of the Act, alleging disability since July 7, 2015. (*See* Tr. 540, 699). Plaintiff's claim was denied initially and upon reconsideration. (*See* Tr. 540, 627, 632). After conducting a hearing on January 24, 2019, Administrative Law Judge Paul Goodson (the "ALJ") denied her application in a decision dated March 29, 2019 concluding that Plaintiff was not

1

disabled within the meaning of the Act from July 7, 2015, through March 31, 2017, which was the date Plaintiff was last insured. (*See* Tr. 540-554). On March 31, 2020, the Appeals Council denied Plaintiff's request for review. (*See* Tr. 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Durham has timely requested judicial review pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration to determine if Ms. Durham was disabled under the law during the relevant period.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from July 7, 2015, through March 31, 2017. At step two, he determined that Plaintiff had the following medically determinable and severe impairments: lupus, lumbar degenerative-disc disease, neuropathy, myofascial pain, median-nerve compression / carpal tunnel syndrome, and anxiety / obsessive compulsive disorder. (*See* Tr. 542). The ALJ found at step three that none of Plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*See* Tr. 543).

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Before proceeding to step four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except for the following limitations:

> The claimant could frequently climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant could frequently balance, stoop, kneel, and crouch. The claimant could occasionally crawl. The claimant could frequently operate foot controls bilaterally. The claimant could frequently handle and finger bilaterally. The claimant would have need to alternate between sitting and standing hourly while remaining on task. The claimant could have no concentrated exposure to hazards such as unprotected heights or machinery. The claimant could not be required to drive or operate heavy machinery. The claimant could perform work involving simple routine repetitive tasks. The claimant could have occasional contact with the public and frequent contact with supervisors and coworkers. The claimant could perform work at non production or non assembly line pace. The work could not require conflict resolution or crisis management.

(Tr. 544–45).

The ALJ found at step four that Plaintiff was unable to perform her past relevant work as a material handler and tire builder but found at step five that jobs existed in significant numbers in the national economy that Plaintiff could have performed, including laundry folder, inspector packer and shipping receiving weigher. (*See* Tr. 548). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act from July 7, 2015, through March 31, 2017. (*See* Tr. 549).

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual

findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, ––– U.S. ––––, 139 S. Ct. 1148, 1151-52 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted).[2] Accordingly, this Court does not review a final decision of the Commissioner *de novo, Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry*, 952 F.3d at 120 (internal citations omitted); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].")

---

[2] As the Fourth Circuit very recently noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty … lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' … [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction 'is so narrow that it is often very difficult for a court to decide upon which side of the line' evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that 'scintilla is Latin for "whatever a judge wants it to mean."' … To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards … but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, No. 19-1972, 2021 WL 667088, at *3 (4th Cir. Feb. 22, 2021).

Thus, while the Court must always ensure that proper legal standards are being followed, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. Rather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the court defers to the ALJ's decision. *See Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

Ms. Durham asks the Court to reverse and/or remand the Commissioner's decision denying her application for disability benefits for three reasons. First, she contends that the ALJ erred when he allegedly failed to consider Durham's sacroiliitis in determining her RFC. Second, she argues that the ALJ failed to make a function-by-function assessment of her functioning prior to establishing her RFC and, finally, that the RFC is unsupported with substantial evidence and thus cannot be affirmed. For the reasons discussed below, the Court finds that none of these grounds support reversal or remand of the ALJ's decision.

**A. Sacroiliitis.**

In listing Plaintiff's severe impairments, the ALJ did not include sacroiliitis, which is an inflammation of the sacroiliac joint(s), where the lower spine and pelvis connect. Plaintiff contends this is error in light of an earlier decision of the Commissioner and the alleged failure of the ALJ to consider the physical impairments associated with sacroiliitis. In a prior unfavorable decision, the Commissioner found "sacroiliitis" as one of Plaintiff's severe impairments, and Plaintiff argues that the ALJ failed to consider that prior decision and give it appropriate weight

5

considering all the facts and circumstances. *See* Acquiescence Ruling 00-1(4), 2000 WL 43774 (Jan. 12, 2000), *Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999). Specifically, Plaintiff claims that had the ALJ found sacroiliitis, regardless whether severe or non-severe, as an impairment at step two, the physical RFC would "probably have to be more restrictive" with respect to walking and moving from sitting to standing and back to sitting.[3]

However, the Court finds that the ALJ did specifically consider the prior decision and gave it "some weight" in his decision Tr. 547.[4] Further, the ALJ specifically noted and considered the physical impairments alleged by Plaintiff related to her sacroiliitis. For example, the ALJ noted that Plaintiff's "back ha[d] been observed to have tenderness to palpation along the spine, shoulders, and hips." Tr. 546, citing Tr. 1001–12. And, the ALJ noted that Plaintiff had an antalgic gait and difficulties moving from sitting to standing and that her treatment included as-needed medication, Neurontin for neuropathic pain, and injections. *See* Tr. 546, 945–46, 1001–12, 1046.

Also, it appears that the medical record inconsistently references sacroiliitis separately from lumbar pain as one of Plaintiff's impairments. In an exhibit cited multiple times by the ALJ (Exhibit B5F), providers at Carolina Spine, Pain, & Rehabilitation, from January 2016 through February 2017, three times diagnosed sacroiliitis or sacroiliac-joint dysfunction as distinct from

---

[3] The ALJ must consider both severe and non-severe impairments in determining residual functional capacity, but a failure to characterize an impairment as severe does not necessarily require remand, provided the ALJ considers all of the impairments, severe and non-severe, at the later steps. *See e.g., Jones v. Astrue*, No. 1:10cv185, 2012 WL 1085658 at *16 (N.D.W.Va. Mar. 30, 2012) (finding error harmless where ALJ considered in his review of the evidence the impacts of the impairment).

[4] Indeed, it appears that the reason that the ALJ gave the earlier decision only "some weight" is that he found that evidence at Plaintiff's hearing supported "greater limitations" than the earlier decision, which the ALJ imposed in Plaintiff's RFC. *See* Tr. 547. Further, the ALJ specifically cited and discussed *Albright* and Ruling 00-1(4). *See* Tr. 541.

lumbar pain, Tr. 1002, 1004, 1011, but also three times diagnosed them together as "Low back pain/ Sacroiliitis/ Sacroiliac joint dysfunction" Tr. 1005, 1007, 1009.[5] Thus, Plaintiff's medical providers apparently saw no error in at times diagnosing sacroiliitis together with low-back or lumbar pain, which the ALJ here found to be among Plaintiff's severe impairments ("lumbar degenerative-disc disease").[6]

In summary, while the medical record (and the ALJ's decision) plainly reflects Plaintiff's hip and back pain and resulting limitations, those impairments are sometimes referenced independently as sacroiliitis and at other times included as a part of the discussion of Plaintiff's lumbar pain in her medical records. Accordingly, the Court does not find that the omission of the specific impairment of sacroiliitis creates any error requiring remand or reversal.

In any event, even if there were error in the ALJ's not including sacroiliitis as a severe impairment, the error would be harmless. "The case law is clear that an ALJ's failure to list a particular impairment as 'severe' during the step-two analysis does not require remand so long as the sequential evaluation continues and the functional effects of any absent impairment are appropriately examined and considered during subsequent steps." *Torres v. Colvin*, No. 1:14-cv-00007-RLV, 2016 WL 54933, at *5 (W.D.N.C. Jan. 5, 2016) (citations omitted). Here, there is no question that the ALJ continued with the sequential evaluation, *see* Tr. 543–49, and the ALJ appropriately considered the functional effects of sacroiliitis in his RFC analysis as discussed above. The ALJ noted the abnormal complaints or findings to which Plaintiff refers, and the ALJ found significant functional limitations. *See* Tr. 544–45; *see also* Tr. 547, citing Tr. 954, 960, 986

---

[5] Defendant also points out that Plaintiff did not specifically allege sacroiliitis or sacroiliac-joint dysfunction at the initial or reconsideration level, despite having been represented by her current attorney. *See* Tr. 601–02, 604, 606, 612–613, 616.

[6] In addition, another of Plaintiff's listed impairments, lupus, causes inflammation and pain in the joints. Tr. 542.

("The claimant has not consistently shown poor gait, specifically to her primary care provider") (contrasting findings of normal gait on examination with the findings of altered gait noted by Plaintiff and other medical providers). Accordingly, while Plaintiff understandably disagrees with the ALJ's analysis, it is apparent from the record that the ALJ considered and evaluated all of Plaintiff's alleged functional impairments, including hip pain, antalgic gait, and difficulties moving from sitting to standing. Therefore, the ALJ's failure to mention sacroiliitis in his decision was at most harmless error.

### B. Function by Function Assessment

Plaintiff's second alleged error is that the ALJ erred in failing to perform a function-by-function assessment. *See* Doc. No. 15 at 14–16. The Fourth Circuit has, however, rejected a *per se* rule requiring remand where the ALJ does not perform an explicit function-by-function analysis. *See Mascio v. Colvin*, 780 F.3d 632, 636-638 (4th Cir. 2015). Rather, the governing standard asks the Court to determine if the ALJ has "fail[ed] to assess the claimant's capacity to perform a relevant function, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.*

Plaintiff asks the Court to find numerous inadequacies in the ALJ's assessment of Plaintiff's capacities. First, Plaintiff argues that the ALJ noted Plaintiff's difficulty focusing on tasks and limited ability to carry out tasks, *see* Tr. 545, but "fail[ed] to cite evidence showing that she is capable of understanding, carrying out, or remembering simple instructions." Doc. No. 15 at 15. However, Plaintiff not the Commissioner bears the burden of establishing her limitations and Plaintiff makes no merits argument as to why the relevant limitations that the ALJ found allegedly are inadequate. *See Hendrickson v. Berryhill*, No. 1:16-cv-00367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) ("A claimant has the burden to prove the extent of h[er]

8

functional limitations; it is not the ALJ's burden to prove a lack of limitations.") (citing *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013)).

Second, Plaintiff argues that "[t]he ALJ admits that the assessments of the State agency medical and psychological consultants did not give any specific limitations or fully consider the effects of physical impairments on overall functioning" and that "there are no RFC assessments in the record, and therefore the ALJ does not rely on any." Doc. No. 15 at 15, citing Tr. 547. However, "there is no requirement that an ALJ base his RFC finding, or any particular limitation in it, on a medical opinion." *Wykle v. Saul*, No. 1:19-cv-155- MOC, 2020 WL 697445, at *6 (W.D.N.C. Feb. 11, 2020) (citations omitted). And, the State agency reports explain that a full functional assessment was not performed due to insufficient evidence — and that there was insufficient evidence because Plaintiff's representative failed to provide information and did not allow contact with Plaintiff. *See* Tr. 606–08, 617–19. Thus, this argument does not support remand.

Third, Plaintiff states, "The ALJ refers to a list of exhibits involving medical treatment for [her] joint pains." The paragraph in the ALJ's decision to which Plaintiff cites is an accurate and relevant continuation of the ALJ's evaluation of Plaintiff's physical impairments:

> [T]reatment has been intermittent, with limited significant imaging results in the record. She was noted in 2015 to have been off her medication and not having had notable studies of her joints [Tr. 1055–56, 1151–53, 1167–68]. She has declined updated imaging, though this has been in part due to finances [Tr. 951–56]. Emergency room reports indicate around this time that the claimant was "fired" by her pain management physician for [being] noncompliant [with] treatment, though it is unclear what terms she violated [Tr. 1156, 1159[8]] On subsequent evaluations, the claimant has not been noted to have notable motor atrophy and the reduced strength was still registered as 4+ versus 5 [Tr. 1001–12]. She has also not exhibited notable loss of range of motion of the spine. The claimant has not consistently shown poor gait, specifically to her primary care provider [Tr. 954, 960, 986 (finding normal gait on examination)]. Furthermore, contrary to her testimony, the claimant generally denied notable side effects of medication to care providers [Tr.

9

> 1001–48]. Treating notes indicate that she was sustained on the same medication
> for her symptoms as well as advised on increasing activity to improve range of
> motion and prevent atrophy.

(Tr. 547). It is unclear whether Plaintiff's statement is asserted as an independent ground for remand or as an example of how the ALJ allegedly did not fully account for Plaintiff's mental limitations, which is discussed separately below. In any event, the Court finds no error in this portion of the ALJ's decision.

Fourth, Plaintiff argues that it is unclear how she "would be capable of performing simple routine repetitive tasks at a non-production rate, when the evidence as a whole shows that she is incapable of performing simple household tasks and is incapable of concentrating due to anxiety and her persistent pain symptoms." Doc. No. 15 at 15, citing Tr. 735–37, 1045. However, the Court finds that while there is evidence that Plaintiff may have some difficultly in functioning (for example she says that she does not drive because of her medications), Plaintiff has not established that she is incapable of functioning beyond the RFC, which contains significant limitations that take into account the evidence of record as determined by the ALJ.

Fifth, Plaintiff argues that the ALJ "twice makes the unsupported and vague statement that she is 'sustained' on medication and 'advisories on stress mitigation'" and that the ALJ "ignores references throughout the record where [she] expressed limitations in her mental status such as reported mood swings (Tr 964), and 'intermittent anxiety, agitation' and preoccupation with her pain symptoms (Tr 1292)." Doc. No. 15 at 15, quoting Tr. 543–44, 547. However, again the Court finds that the ALJ's statements regarding medication and stress management are supported by the record. *See* Tr. 543–44, 547, 951, 953–55, 959–61, 966–67, 975, 981, 985, 987–88, 991, 993.[7]

---

[7] For example, Plaintiff notes her November 2016 complaint of "feel[ing] like she goes through 16 emotions a day. She will feel fine one moment and then will be really sad. Happens randomly."

10

Overall, it appears that on limited evidence in the record the ALJ gave Plaintiff the benefit of the doubt regarding mental limitations. "[C]onsidering the claimant's overall impairments, including a notable chronic impairment, as well as the effects of both pain and pain management, I find at least some mental limitations as a result." Tr. 547. And, as with physical limitations, the ALJ found greater mental limitation than did the prior ALJ. *Compare* Tr. 545 *with* Tr. 591; *see also* Tr. 547. Specifically, whereas the prior ALJ limited Plaintiff to unskilled work, *see* Tr. 591, the ALJ here found that Plaintiff could not drive or operate heavy machinery; was limited to simple, routine, repetitive tasks; was limited to occasional contact with the public and frequent contact with supervisors and coworkers; was limited to non-production or non- assembly-line pace; and could not handle conflict resolution or crisis management. *See* Tr. 545.

Accordingly, the Court finds that the ALJ has fairly assessed Plaintiff's capacity to perform the relevant functions and there are no other inadequacies in the ALJ's analysis that frustrate meaningful review by the Court.

### C. Substantial Evidence for the ALJ's RFC Finding

Plaintiff's remaining argument is that the ALJ's RFC findings lack substantial evidence. However, as discussed at length above in connection with Plaintiff's other arguments, to the extent Plaintiff has put forward conflicting evidence with respect to which reasonable minds could differ, deference to the ALJ's judgment is required. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir.

---

Tr. 964. But, at that same visit, Plaintiff reported anxiety but no depression; psychiatric-examination findings were normal, with appropriate mood and affect; and the treatment plan for Plaintiff's anxiety was merely to discuss stress management or counseling and options of increasing Effexor or adding medication plus or minus psych referral. *See* Tr. 966– 68. Also, at her next visit 10 days later, Plaintiff did not complain of anxiety or depression; she had a normal psychiatric examination, with appropriate mood and affect; and the provider described her anxiety as stable. *See* Tr. 959–61.

2005) (stating that, in conducting substantial-evidence review, a court does not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ and that, where conflicting evidence allows reasonable minds to differ, the responsibility for making the decision falls on the ALJ) (citation and internal quotation marks omitted).

In sum, the ALJ's evaluation of Plaintiff's RFC, like the ALJ's decision as a whole, is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; that is, the ALJ has cleared the "not high" threshold for substantial evidence, and thus his findings and ultimate decision should be affirmed. *Biestek*, 139 S. Ct. at 1154 (2019) (citation and internal quotation marks omitted).

## IV. CONCLUSION

While the Court does not reach any conclusion as to how it would rule on Plaintiff's claim on a *de novo* review, a reasonable mind would find that the evidence is adequate to support the ALJ's decision. The decision of the ALJ, therefore, is hereby **AFFIRMED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: April 29, 2021

Kenneth D. Bell
United States District Judge